IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 2 6 2018
JULIA C. DUDLEY, CLERK
BY /s/
DEPUTY CLERK

AMY J.,                                   )
                                          )
    Plaintiff,                         )
                                          ) Civil Action No. 7:17cv00116
v.                                        )
                                          )
NANCY A. BERRYHILL,                       ) By: Michael F. Urbanski
Commissioner of Social Security,          ) Chief United States District Judge
                                          )
    Defendant.                         )

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation on August 13, 2018, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted and the Commissioner's final decision be affirmed. Plaintiff Amy J., who is proceeding pro se, has filed an objection to the report.

Plaintiff's objection points to no specific error in the magistrate judge's analysis. The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with

sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. Here, plaintiff's objection does not meet the specificity requirement of Rule 72(b).

In her objection, plaintiff insists she is disabled despite the Commissioner's conclusion to the contrary. However, it is not the province of a federal court to make administrative disability decisions. Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and

somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Mindful of the fact that plaintiff is proceeding pro se and her filings must be liberally construed, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)), the court has reviewed the entire record in this case and agrees with the magistrate judge's finding that substantial evidence supports the Commissioner's decision.

## A.

This case primarily concerns opinion evidence. Johnson's primary care physician, Dr. Cummings, filled out several medical forms for Johnson's employer. On a Family Medical Leave Act form dated January 9, 2014, he checked a box indicating Johnson was unable to work, and noted she was unable to drive secondary to seizure disorder and unsafe to work secondary to a combination of her multiple sclerosis and seizure disorder. R. 1001. In June 2015, Dr. Cummings filled out a "Reasonable Accommodation Questionnaire" for Johnson's employer, stating "Patient cannot perform job functions [secondary to] MS/seizures." R. 917. He noted she had no lifting restrictions and stated her limitations were "refractory-recurrent seizures – last petit mal seizure < 1 week." R. 917. In addition, office notes from June 2014 reference short term disability / long term disability "application recommended." R. 435. On March 10, 2015, he noted in his treatment records that "disability hearings and evaluations had taken convoluted course," and then that Johnson was unable to work secondary to "MS recurrent siezures [sic] and daily headache[s]

3

and narcotic usage." R. 865. A handwritten note on this same record states: "UMUM – approved disability." Id.

Johnson's treating neurologist, Dr. Elechi, wrote several letters to Johnson's disability benefits carrier on her behalf. In a 2012 letter, he stated Johnson's multiple sclerosis causes weakness, pain and difficulty with daily activities, and that it has been difficult for her to get to work. R. 436. Dr. Elechi stated: "I do not believe she will be able to hold an employed position anymore. From the point of view of the neurologist, she can start the process to apply for disability." Id.

A letter dated December 30, 2013 states as follows:

> Dear Sir or Madam:
>
> This is a letter to update you on Amy Johnson. I am treating her for multiple sclerosis. She has recently had a seizure which is still being evaluated by me. In addition, she developed a skin rash and there is concern this may be from her medication.
>
> She continues to be under close medical care and will not be able to work full-time at this time.
>
> Kindly contact me if any further information is needed.
>
> Sincerely,
> Clement A. Elechi, M.D.

R. 853.

Dr. Elechi wrote again in January 2014, this time in response to specific questions posed by the disability carrier concerning Johnson's condition and limitations. Dr. Elechi explained Johnson's diagnoses are multiple sclerosis, migraines, and a single, new-onset seizure, and that her symptoms are fatigue and pain. R. 854. He stated he was treating Johnson with Tecidera, a newer MS disease-modifying therapy, as well as pain medication,

4

and that she was to follow up with him every 3 to 4 months. Id. Dr. Elechi stated her specific limitations include: "climbing, lifting more than 20 pounds. She is also limited as far as any kind of work that involves balance or climbing to heights. . . being in an unduly warm environment, for example over 75 degrees, unduly bright and noisy environment which can all aggravate her symptoms." R. 855. As far as Johnson's prognosis, Dr. Elechi wrote: "MS is a permanent condition so far. We do manage this condition, but it is an incurable condition. Some patients, because of the nature of the symptoms, are not able to obtain gainful employment." Id.

Interestingly, Dr. Elechi's office notes from October 23, 2014 state:

> [Johnson] is requesting to "start over" her disability process. She brought in an FMLA form for me to fill out. However at this time she is not employed and I did point out that FMLA refers to episodes of absence from work and did not apply to someone who is not working. I have told her that I would be glad to respond to the insurance companies if they had any specific question, or alternatively her attorney could send in the appropriate paperwork. I did request that she not keep sending messages requesting one letter or the other and then stating that it was the wrong letter; it will be much more appropriate to respond to a specific question from the insurance companies.
>
> She has also claimed that I "put me out of work" in 2009. However I actually saw her for the very 1st time in 2010 and only in 2013 did issues of short-term disability appear.

R. 850.

## B.

The ALJ considered the opinion evidence from Johnson's treating physicians and gave their opinions little weight. As regards Dr. Cummings, the ALJ stated that his opinions are not consistent with his examinations, which were unremarkable at the time. R. 38.

5

Additionally, the ALJ found that Johnson's multiple sclerosis was stable, and that her ongoing petit mal seizures would not preclude all work and could be accounted for by providing some postural and environmental restrictions, including precluding all driving. R. 38. With respect to Dr. Elechi, treatment records indicate she was neurologically intact, and as of June 2014, she had not had any flares and was independent in her activities of daily living. R. 39; see R. 814-15. Also, "[a]s with Dr. Cummings, the objective findings do not support a complete inability to work." R. 39.

Substantial evidence in the record supports the ALJ's decision to give little weight to the statements of Drs. Cummings and Elechi concerning Johnson's ability to work. Most of this "opinion evidence" consists of conclusory statements that Johnson is "unable to work," which are opinions on issues reserved to the Commissioner. As the Administrative Law Judge correctly noted in his decision, "[o]pinions on issues reserved to the Commissioner, even from a treating medical source are not entitled to any special significance." R. 37; see 20 C.F.R. § 404.1527(d).

In any event, there is little in Dr. Cummings's records to support his statements that Johnson is unable to work. His treatment notes are sparse, and he appears to be relying on her diagnoses of MS and seizure disorder as well as her subjective allegations in stating that she is unable to work. Moreover, Dr. Elechi's conclusory statements that Johnson is unable to work, as set forth in his 2012 and 2013 letters to Johnson's disability carrier, are inconsistent with his 2014 findings that she is limited only in terms of climbing, lifting more than 20 pounds, balancing, and working around heights or in an unduly warm, bright or

6

noisy environment. The fact that neurological examinations were unremarkable and EEGs were normal lends further support to the ALJ's decision to give these opinions little weight.

Records from Dr. Burke, another neurologist with whom Johnson sought treatment after becoming dissatisfied with Dr. Elechi, flatly contradict the statements of Drs. Cummings and Elechi that Johnson is unable to work. Dr. Burke stated in March 2016 that plaintiff did not suffer from cognitive impairment or ambulatory dysfunction that would render her unable to work on account of her multiple sclerosis, and he declined to participate in her disability claim absent a definitive diagnosis as to her reported seizures.[1] He stated the fact that plaintiff could not drive as a result of these seizures did not preclude her from working. R. 972-73.

Notably, Dr. Burke remarked that when he discussed with plaintiff his line of reasoning as to her limitations, "she responded that there were some days where she had to 'crawl' around the house because her legs were weak. Having seen a large number of patients with multiple sclerosis, I would say that what she reports is atypical for multiple sclerosis. Patients with multiple sclerosis, if disabled to the point of being unable to walk, do not fluctuate to such an extent that gait is normal on some days, alternating with paraplegia on other days. This is simply not consistent with how the disease affects the spinal cord or higher gait centers." R. 972.

It is also worth noting that Dr. Burke's records indicate that plaintiff and her husband were confrontational and "more interested in [Dr. Burke's] participation in the patient's disability claim." R. 969. He further stated he had no issue continuing to treat plaintiff, as he

---

[1] April 2015 records from University of Virginia neurologist Matthew Elliott, M.D., state Johnson's "descriptions of her spells are somewhat atypical," and are suggestive of non-epileptic episodes. R. 884.

7

believed he could help her, but that plaintiff and her husband expressed such dissatisfaction with him following this office visit that "security ended up coming to the floor." R. 972. On this record, there is substantial evidence to support the ALJ's decision to give the opinions of Dr. Cummings and Elechi little weight.

## C.

The same goes for the opinion of consultative examiner Dr. Ewen. The ALJ gave less weight to Dr. Ewen's opinion, finding inconsistencies between her narrative opinion and the corresponding medical source statement. R. 39. For example, Dr. Ewen stated in her narrative report that plaintiff has no manipulative limitations, yet in her medical source statement, she indicated plaintiff can only occasionally reach, handle, finger, feel, push and pull. Compare R. 957 with R. 962. Dr. Ewen's objective findings were also inconsistent with the degree of limitation documented in the medical source statement. Plaintiff was able to get up from a chair and get on and off the examining table without assistance. She could tandem walk and stand on her toes but was unable to walk on her heels. R. 956. She had a normal gait except for on her heel on the right, she had normal motor strength in her upper extremities, normal motor strength in her lower extremities except for mildly reduced (4 out of 5) dorsiflexion on the right, and normal range of motion of the spine. R. 956. Yet Dr. Ewen opined plaintiff can only sit 4 hours, stand 1 hour and walk 1 hour in an 8-hour workday; that she can occasionally lift and carry up to 20 pounds and frequently lift and carry only 5 pounds; she can never climb stairs, ladders or scaffolds; she can occasionally balance; and she can never stoop, kneel, crouch or crawl. R. 960-63; see also R. 957.

8

The ALJ discussed Dr. Ewen's opinion in the context of these examination findings, as well as the broader objective evidence of record, including the treatment notes from neurologist Dr. Burke. The ALJ concluded that Dr. Ewen's opinion was based completely on plaintiff's subjective complaints which, in this case, "are out of proportion with the weak and inconsistent objective medical findings contained in the record." R. 39. Substantial evidence supports the ALJ's decision in this regard, especially given the lack of objective findings to support the degree of limitation set forth in Dr. Ewen's medical source statement, and Dr. Burke's records, which suggest Johnson's "allegations were inconsistent with her disease process." R. 39.

**D.**

The ALJ instead gave great weight to the opinions of the reviewing state agency physicians, who found that Johnson could perform work at the light exertional level with certain postural and environmental limitations, which take into account her seizure disorder and headaches, as well as her multiple sclerosis. R. 39-40. In relying on these opinions and concluding that Johnson is not disabled under the Social Security Act, the ALJ properly evaluated the medical opinion evidence of record pursuant to 20 C.F.R. § 404.1527(d), considering the relevant factors. R. 37. He found there are "no persuasive opinions in the record to suggest greater physical or mental limitations than what has been accounted for in the claimant's residual functional capacity." R. 38. In so finding, he exhaustively detailed the medical evidence and plaintiff's treatment history and explained his RFC assessment in a

thorough and well-reasoned opinion. While plaintiff might disagree with his decision,[2] the court finds substantial evidence in the record to support it. "Ultimately, it is the duty of the administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The ALJ adequately performed that duty here.

Having reviewed the entire administrative record, the court finds that the magistrate judge was correct in concluding substantial evidence supports the Commissioner's decision in this case. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

Entered: 09/26/2015

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

[2] In her objection, plaintiff seeks full compensation of benefits, 5 years of back pay, and $250,000 for "discrimination," "hardship," and "mental anguish." Under the Social Security Act, Congress did not provide a remedy for monetary damages against Social Security officials who administer the federal benefits program. Schweiker v. Chilicky, 487 U.S. 412, 414 (1988).

10